United States District Court
Southern District of Texas
**ENTERED**
January 27, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-03120 |
| | § | |
| DONALD SIMON, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Donald Simon is an admitted tax fraud. In its complaint against Simon, the United States alleged that Simon "prepares false and fraudulent U.S. Individual Income Tax Returns . . . for customers to obtain tax refunds to which the customers are often not entitled." (Dkt. No. 1 at 3). While Simon filed an answer, he did not deny this allegation. (Dkt. No. 6 at 1). Instead, Simon responded to this allegation with "Defendant ____." (*See id.* at 1). In fact, Simon responded to almost all of the United States' allegations in this way. (*See id.* at 1–4).

Since Simon did not deny the United States' allegations, he has therefore admitted them. Fed. R. Civ. P. 8(b)(6). The only question remaining is whether these admitted allegations entitle the United States to summary judgment on its claims and to permanent injunctive relief. As explained below, they do. Accordingly, the United States' Motion for Summary Judgment, (Dkt. No. 18), is **GRANTED**.

## I.    BACKGROUND[1]

Donald Simon lives in Houston, Texas, where he helps clients prepare their federal income tax returns.  (Dkt. No. 1 at 2–3).  For the 2018–2020 tax years, Simon prepared over 1,200 tax returns using his own preparer-identification number and over 500 tax returns using someone else's.  (*Id.* at 2–4).  Of these roughly 1,700 returns, 94.8% claimed refunds.  (*See id.*).

Simon achieved these impressive numbers in large part through fraud.  (*See id.* at 4–14) (describing Simon's fraudulent activities); (*see also* Dkt. No. 6 at 1–4) (failing to deny these allegations).  Broadly, Simon engaged in three fraudulent practices:

1.    Simon falsely claimed energy-efficiency expenses and credits on his clients' returns, (*see* Dkt. No. 1 at 4–8);

2.    Simon falsely claimed electric-vehicle expenses and credits on his clients' returns, (*see id.* at 8–11); and

3.    Simon falsely claimed various business expenses and credits on his clients' returns, including when the client did not own a qualifying business, (*see id.* at 11–14).

The IRS estimates that Simon's fraudulent conduct cost the United States close to $2 million in tax revenue.  (*Id.* at 15).

Simon, who appears pro se, does not deny any of this.  In his answer, he denies only two of the United States' allegations, (Dkt. No. 6 at 1, 4), admits to five, (*id.* at 1), and states that "no admission or denial is required" for three others because they are "merely a statement of incorporation by reference," (*id.* at 3).  But mostly, Simon responds to the

---

[1]    Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

United States' allegations with the word "Defendant" followed by four (or sometimes five) underscores and a period (though sometimes not).  For example,



(*Id.* at 3).  Sixty-five of the seventy-eight numbered paragraphs in Simon's answer respond this way, including those responding to the material fact allegations.  (*See id.* at 1–4).

A few months after this answer, Simon filed a handwritten request to continue a pretrial conference.  (Dkt. No. 8).  After that . . . nothing.  Simon made no further appearances.  He did, however, answer a phone call from the United States' counsel as recently as June 18, 2024.  (*See* Dkt. 21 at 3).

The United States moved for summary judgment on its claims, requesting injunctive relief.  (Dkt. No. 18).  Simon did not respond.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it could affect the suit's outcome under governing law.  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).  The nonmovant must "'go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'"  *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553).  "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'"

4

*Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.  DISCUSSION

"An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). And even facts initially denied may later be considered undisputed if a party does not respond to an opposing party's motion for summary judgment. *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F.App'x 214, 215 (5th Cir. 2015) (citing *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988)).

Simon did not deny any of the United States' material factual allegations, (*see* Dkt. No. 6), and did not respond to the United States' summary-judgment motion. While the Court acknowledges the well-settled principle that "[*p*]*ro se* pleadings are to be 'liberally construed,'" *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97

S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)), Simon's silence leaves the Court with nothing to liberally construe.[2]  Accordingly, the Court takes the United States' facts as true and asks only whether they entitle it to summary judgment and permanent injunctive relief.

The United States claims that it is entitled to injunctive relief under three provisions of the Internal Revenue Code: 26 U.S.C. §§ 7407, 7408, and 7402.  (*See* Dkt. No. 18 at 7–16).  It requests an injunction prohibiting Simon from engaging in various tax-related activities and requiring him to take several remedial measures.  (*See id.* at 16); (*see also* Dkt. No. 1 at 20–22).  As explained below, the United States has shown that it is entitled to summary judgment and permanent injunctive relief under all three provisions.

### A.    26 U.S.C. § 7407

Section 7407, enacted as part of the Tax Reform Act of 1976, reflects Congress's intent to prevent abuses by tax preparers in reporting clients' income tax liabilities. *United States v. Ernst & Whinney*, 735 F.2d 1296, 1302 (11th Cir. 1984).[3]  Three prerequisites must be met for a court to issue an injunction under Section 7407: (1) "the defendant must be a tax preparer"; (2) "the conduct complained of must fall within one of the four areas of proscribed conduct [under] § 7407(b)(1)"; and (3) "the court must find that an injunction is 'appropriate to prevent the recurrence' of the proscribed conduct [under] § 7407(b)(2)."  *Id.* at 1303.

---

[2]    Furthermore, in his answer, Simon affirmatively denied some of the United States' allegations while admitting others or stating that "no admission or denial is required."  (Dkt. No. 6 at 1–4).  The undermines any suggestion that his failure to address the United States' material allegations was due to ignorance or a lack of awareness of the need to deny them.

[3]    The Fifth Circuit has not addressed Section 7407.  Accordingly, the Court relies on the statute's text as explained by the well-reasoned analyses of other circuit courts.

### 1.    Simon is a tax return preparer

A "tax return preparer" is "any person who prepares for compensation . . . any return of tax imposed by this title or any claim for refund of tax imposed by this title." 26 U.S.C. § 7701(a)(36)(A).  Simon prepares tax returns for compensation, (*see* Dkt. No. 1 at 2–3, 14); (*see also* Dkt. No. 18 at 9), so he is a tax return preparer.

### 2.    Simon engaged in proscribed conduct

Section 7407(b) lists the proscribed conduct to be enjoined.  Injunctive relief may be appropriate if a tax preparer has engaged (1) "in any conduct subject to penalty under section 6694" or (2) "in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." 26 U.S.C. § 7407(b)(1)(A), (D).

Sections 6694(a) and (b) of the Internal Revenue Code provide for penalties against tax return preparers who understate a customer's tax liability based on unrealistic positions or because of the preparer's willful, reckless, or intentional disregard of rules and regulations.  26 U.S.C. § 6694(a)–(b).  As detailed throughout the United States' complaint, Simon repeatedly violated Sections 6694(a) and (b) by preparing tax returns containing false business losses and claiming false energy-efficiency and electric-vehicle credits.  (Dkt. No. 1 at 3–14).  "Courts across the nation have held that [claiming false losses and credits] is unlawful under § 6694."  *United States v. Umbrella Fin. Servs., LLC*, 715 F.Supp.3d 967, 975 (N.D. Tex. 2024) (collecting cases).  And Simon failed to deny the United States' allegations that he knowingly engaged in this conduct.  (*See* Dkt. No. 1 at 3–4, 16–17); (*see also* Dkt. No. 6 at 1–4).

Simon also engaged in fraudulent conduct that "substantially interfere[d] with the proper administration of the Internal Revenue laws." 26 U.S.C. § 7407(b). Simon's customers, through returns he prepared, did not report their correct tax liabilities, did not pay taxes they owed, and received refunds to which they were not entitled. (*See* Dkt. No. 1 at 4–14).

### 3. Injunctive relief is appropriate to prevent the recurrence of Simon's conduct

Once the United States establishes any of the violations listed in Section 7407, it need only demonstrate that "injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7407(b)(2). If the court finds that a tax preparer "continually or repeatedly" engaged in any of the proscribed conduct and that a narrower injunction would not be enough to prevent future violations, the court may enjoin that person from acting as an income tax return preparer altogether. *Id.*

Courts consider the following factors when determining whether injunctive relief is appropriate to prevent a likely recurrence:

1. the gravity of the harm caused by the offense;

2. the extent of the defendant's participation;

3. the defendant's degree of scienter;

4. the isolated or recurrent nature of the infraction;

5. the defendant's recognition (or nonrecognition) of his own culpability; and

6. the likelihood that the defendant's occupation would place him in a position where future violations could be anticipated.

*United States v. Est. Pres. Servs.*, 202 F.3d 1093, 1105 (9th Cir. 2000); *United States v. Kaun*, 827 F.2d 1144, 1149–50 (7th Cir. 1987) (same); *United States v. Stover*, 650 F.3d 1099, 1112 (8th Cir. 2011) (same); *United States v. Gleason*, 432 F.3d 678, 683 (6th Cir. 2005) (same); *United States v. Stinson*, 729 F.App'x 891, 896 (11th Cir. 2018) (same).

        a.      <u>Gravity of harm</u>

Simon's conduct caused significant harm.  The United States alleged that Simon's customers "are harmed by his behavior because they pay him to prepare proper tax returns and he does not do so," which means that "those customers may face assessments for tax deficiencies, interest, and penalties." (Dkt. No. 1 at 14–15).  Simon's "conduct also harms the United States because his customers' understated tax liabilities result in lost tax revenue" estimated "to be close to two million dollars." (*Id.* at 15).  Likewise, "the IRS must devote resources to identifying and examining the tax returns of [Simon's] customers; ascertaining their correct tax liabilities; collecting any taxes, interest, and penalties they owe; and recovering any tax refunds erroneously issued to them." (*Id.*). Simon's "conduct also harms honest tax return preparers" because Simon "gains an unfair competitive advantage over tax return preparers who prepare returns in accordance with the law." (*Id.*).  Finally, Simon's conduct "harms the public at large by undermining public confidence in the administration of the federal tax system and encouraging non-compliance with internal revenue laws." (*Id.*).  Simon does not deny any of these allegations. (*See generally* Dkt. No. 6).

b.    <u>Extent of participation</u>

Simon's participation is extensive.  Simon's preparer-identification number is listed on hundreds of false returns, (Dkt. No. 1 at 2), and he does not deny the United States' allegation that he used someone else's identification number to falsify hundreds more.  (*See* Dkt. No. 1 at 2–4); (*see also* Dkt. No. 6 at 1–4).

c.    <u>Knowledge</u>

As someone who holds himself out as a tax professional, (*see* Dkt. No. 1 at 2), Simon is charged with knowledge of the Internal Revenue Code, *see United States v. Venie*, 691 F.Supp. 834, 839 (M.D. Pa. 1988) (citing *United States v. Savoie*, 594 F.Supp. 678, 684 (W.D. La. 1984)).  Simon also does not deny the United States' allegations that he knowingly engaged in fraudulent conduct and listed expenses and credits unsupported by—and sometimes contradictory to—the information he received from his clients.  (*See* Dkt. No. 1 at 3–14, 16–17); (*see also* Dkt. No. 6 at 1–4).

d.    <u>Recurrent nature</u>

Simon's conduct spanned three years and more than 1,700 tax returns.  (Dkt. No. 1 at 2–4).  Based on the duration of the scheme and the large number of returns that Simon prepared, (*id.*), this was not an isolated event.

e.    <u>Recognition of culpability</u>

Though Simon has, in some sense, recognized his culpability by failing to deny the United States' allegations of fraud, he has not expressed remorse, acknowledged his conduct as unlawful, or recognized the harm he caused.  *Cf. United States v. Carter*, No. 3:16-CV-00673, 2017 WL 4369488, at *4 (W.D.N.C. Oct. 2, 2017) ("The record contains no

10

indication that Defendant has ever shown remorse or even acknowledged her [tax-fraud] conduct as unlawful."), *aff'd*, 711 F.App'x 177 (4th Cir. 2018); *United States v. Stinson*, 239 F.Supp.3d 1299, 1322 (M.D. Fla. 2017) ("At trial, Stinson showed remorse only that his operation had been halted . . . . Not once has Stinson recognized the harm he caused his customers."), *aff'd*, 729 F.App'x 891 (11th Cir. 2018).

f.    <u>Likelihood of future violation</u>

Likewise, Simon has provided no assurances that he will desist from his fraudulent conduct and has proved evasive throughout this lawsuit.  (*See* Dkt. Nos. 13, 21).  He does not dispute the United States' claim that he will "further attempt to conceal his actions, find new ways to assist with tax return preparation, or find new phony claims to which his customers are not entitled on returns to skirt the language of a limited injunction."  (Dkt. No. 18 at 11).

* * *

Based on the totality of the circumstances—and considering that all of these factors favor the Government—the Court determines that an injunction under Section 7407 preventing Simon from acting as an income tax return preparer is appropriate and necessary to prevent future interference with the Internal Revenue laws.

**B.    26 U.S.C. § 7408**

Under 26 U.S.C. § 7408, a court may enjoin an individual from engaging in conduct subject to a penalty under 26 U.S.C. §§ 6700 or 6701 if a court determines that the individual has engaged in the proscribed conduct and "injunctive relief is appropriate to prevent recurrence" of the conduct.  The United States contends that Simon is subject to

penalty under Section 6701. (Dkt. No. 1 at 17–18); (*see also* Dkt. No. 18 at 11–12).  Section 6701(a) imposes a penalty on any person who (1) aids, assists, or advises with respect to the preparation or presentation of a tax return; (2) knows or has reason to know that the return will be used in connection with a material matter arising under federal tax law; and (3) knows that the return (if used) would result in an understatement of another person's tax liability.  26 U.S.C. § 6701.  Put simply, "Section 6701(a) imposes a penalty on any person who knowingly aids and abets others in underreporting their tax liability." *United States v. Simon*, 824 F.App'x 986, 990 (11th Cir. 2020).

According to the undenied allegations in the United States' complaint, Simon did exactly that.  Simon prepared or helped prepare his clients' tax returns.  (Dkt. No. 1 at 3–4).  Simon knew that these returns would be submitted to the IRS as a representation of the clients' tax liabilities, (*id.* at 3–4, 18), which is a "material matter," *see Umbrella Fin. Servs., LLC*, 2024 WL 455341, at *5.  And Simon knew that the returns understated his clients' tax liabilities.  (Dkt. No. 1 at 18).  Moreover, Simon's conduct was pervasive, (*see id.* at 4–14), and "pervasive conduct is sufficient to show actual knowledge as required by Section 7601," *United States v. Johnston*, No. 1:21-CV-00478, 2022 WL 17978909, at *4 (E.D. Tex. May 12, 2022).

In short, Simon has repeatedly engaged in conduct subject to penalty under Section 6701.  The Court may therefore issue an injunction under Section 7408 if injunctive relief is appropriate to prevent the recurrence of that conduct.  26 U.S.C. § 7408.  As already explained, *see supra* III(A)(3), injunctive relief is appropriate to prevent a likely recurrence of Simon's conduct.

C.    26 U.S.C. § 7402(a)

Finally, Section 7402(a) grants district courts broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).  The authority provided under Section 7402(a) is "in addition to and not exclusive of any and all other remedies" available to enforce the Internal Revenue laws.  *Id*.  The statute manifests "a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957).  Accordingly, "[t]he language of § 7402(a) encompasses a broad range of powers . . . ."  *Ernst & Whinney*, 735 F.2d at 1300.

"[T]he majority of district courts in Texas and elsewhere" recognize "that the traditional requirements associated with injunctions need not necessarily be met in order to obtain a § 7402(a)-based injunction."  *United States v. Padron*, No. 7:17-CV-00009, 2017 WL 2060308, at *4 (S.D. Tex. May 12, 2017) (collecting cases).  Even so, courts are "free" to weigh the traditional factors when considering an injunction under this Section.  *United States v. Grider*, No. 3:10-CV-00582, 2010 WL 4514623, at *2 (N.D. Tex. Nov. 2, 2010). Under Section 7402(a),

> A party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Texas v. Yellen*, 105 F.4th 755, 774 (5th Cir. 2024) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006)).

### 1.    __Irreparable injury__

As the Court has already explained, *see supra* III(A)(3), Simon's conduct has caused substantial harm, much of which is irreparable (that is, not compensable).  *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974).  For these reasons, and because Simon has not provided any argument to the contrary, the Court finds that irreparable harm has resulted, and will continue to result, without an injunction.

### 2.    __Inadequacy of legal remedies__

Though the inadequacy of legal remedies is a traditional equitable-relief factor, the language of Section 7402(a) suggests that it is not required for Section 7402-based injunctions.  *See* 26 U.S.C. § 7402(a) ("The remedies hereby provided are in addition to and not exclusive of any and all other remedies . . . .").  In any case, there is no adequate remedy at law because Simon's continued operation causes irreparable harm to his customers and the public at large, and there is no way of stopping him from fraudulently preparing taxes absent an injunction.  Likewise, "[t]he Government has no adequate remedy at law" to recover its losses because individual suits against Simon's customers "would entangle the Government in a maze of lawsuits."  *Savoie*, 594 F.Supp. at 682.

### 3.    __Balance of harms__

The balance between the harm to the United States if Simon is not enjoined, and the harm to Simon if he is, favors the United States.  The United States asserts that, absent an injunction, it will continue to suffer (1) loss of tax revenue; (2) a drain on IRS compliance and investigative resources; and (3) harm to the tax system generally when competitors and the public perceive that Simon is disregarding federal tax laws without

consequence. (Dkt. No. 1 at 14–15). On the other hand, if Simon is enjoined, his business and personal financial stability will presumably suffer because he will not be able to engage in the type of tax-preparation activities that are the foundation of his business. Even so, because Simon's "business model fundamentally depends on defrauding customers and the government, which does not provide a legitimate source of income," any harm caused to Simon by an injunction would be "substantially outweighed by the harm to which [his] clients" and the United States are subjected. *United States v. Marc*, No. 6:18-CV-02147, 2020 WL 6064793, at *8 (M.D. Fla. Sept. 1, 2020).

### 4. Public interest

A permanent injunction against Simon serves the public interest. There is a "broad public interest in maintaining a sound tax system." *United States v. Lee*, 455 U.S. 252, 253, 102 S.Ct. 1051, 1053, 71 L.Ed.2d 127 (1982). As the United States points out, an injunction would "protect the public from Simon's actions and spare his customers from having false tax returns prepared in their names and facing potential IRS audits." (Dkt. No. 18 at 15). Also, "[e]very bogus refund claimed by Simon not only depletes the Treasury[] but—even if such efforts can be made—also requires the expenditure of more resources to investigate and attempt their recovery." (*Id.* at 15–16). The Court agrees.

* * *

Though "the traditional requirements associated with injunctions need not necessarily be met in order to obtain a § 7402(a)-based injunction," *Padron*, 2017 WL 2060308, at *4, the traditional factors support the United States' application all the same. The Court has determined that Simon's conduct interferes with the proper administration

of the tax laws, and an injunction is appropriate and necessary to prevent future harm. The Court has also considered the traditional equitable factors and concluded that each factor favors imposing an injunction. Therefore, the Court finds that an injunction under Section 7402(a) is warranted.

### D.   SCOPE OF THE INJUNCTION

The United States has shown that it is entitled to injunctive relief under three provisions of the Internal Revenue Code. The Court now determines the proper scope of injunctive relief.

"'[T]he scope of injunctive relief is dictated by the extent of the violation established.'" *ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979)), *overruled on other grounds by Daves v. Dallas County*, 22 F.4th 552 (5th Cir. 2022). "A district court abuses its discretion if it does not narrowly tailor an injunction to remedy the specific action which gives rise to the order. Thus, an injunction must be vacated if it fails to meet these standards and is overbroad.'" *Id.* (quoting *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)) (cleaned up). "'The broadness of an injunction refers to the range of proscribed activity . . . [and] is a matter of substantive law.'" *Id.* (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975)).

The United States requests an injunction prohibiting Simon from engaging in various tax-related activities and requiring Simon to take several remedial measures. (*See* Dkt. No. 1 at 16–22). A review of the caselaw confirms that—given the serious and pervasive nature of the violation established—the injunctive relief that the United States

requests is appropriate under Sections 7402, 7407, and 7408. Indeed, courts in this circuit have entered injunctions like the one the United States requests under these provisions. *See, e.g.*, *United States v. Alexander*, No. 4:22-CV-04034, 2023 WL 5687033, at *1 (S.D. Tex. July 20, 2023); *United States v. Wells*, No. 5:17-CV-00140, 2018 WL 3155722, at *1–2 (S.D. Miss. June 5, 2018); *United States v. Robinson*, No. 2:18-CV-01258, 2018 WL 1305182, at *1–2 (E.D. La. Feb. 16, 2018).

## IV.    CONCLUSION

For the above reasons, the Court holds that the United States has shown its entitlement to permanent injunctive relief under 26 U.S.C. §§ 7402, 7407, and 7408. Accordingly, the United States' Motion for Summary Judgment, (Dkt. No. 18), is **GRANTED**. The Court will enter the permanent injunction in a separate order.

It is SO ORDERED.

Signed on January 26, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

17